

| | Counsel | Associates |
|---|---|---|
| JOEL N. WERBEL> | LORI BROWN STERNBACK*+ | TRACY B. BUSSEL> |
| JOHN METHFESSEL, JR.> | MARC DEMBLING*+ | JEANNE K. CHESTNUT^ |
| EDWARD L. THORNTON*> | PAUL J. ENDLER JR.> | MICHAEL R. EATROFF> |
| DONALD L. CROWLEY*+ | GERALD KAPLAN+ | TIMOTHY J. FONSECA+ |
| FREDRIC PAUL GALLIN*+^ | STEVEN A. KLUXEN^ | SCOTT V. HECK> |
| STEPHEN R. KATZMAN# | JOHN R. KNODEL*+ | FRANK J. KEENAN+ |
| WILLIAM S. BLOOM>* | MARTIN R. MCGOWAN, JR.> | LESLIE A. KOCH+ |
| ERIC L. HARRISON*+ | CHARLES T. MCCOOK, JR. *> | ALLISON M. KOENKE> |
| MATTHEW A. WERBEL> | JARED P. KINGSLEY*+ | DANIELLE M. LOZITO+ |
| | | DARREN M. MALONEY> |
| | Of Counsel | DWIGHT J. MICHAELSON^ |
| | JOHN METHFESSEL, SR.> | KEITH J. MURPHY+ |
| | | MATTHEW L. RACHMIEL> |
| | | WILLIAM J. RADA+ |
| | | CHARLES P. SAVOTH, III> |
| | | LEONARD E. SEAMAN, III^ |
| | | GINA M. STANZIALE> |
| | | MITCHEL TARTER+ |

\* Certified by the Supreme Court of
  New Jersey as a Civil Trial Attorney
+Member of NY & NJ Bar
^Member of PA & NJ Bar
\>Member of NJ Bar only
#Member of NJ & LA. Bar
%Member of MI Bar
<Member of NJ and DC

**Please reply to New Jersey**

January 9, 2008

**VIA LAWYERS SERVICE**
Hon. Dennis M. Cavanaugh, U.S.D.J.
451 U.S. Post Office Courthouse Bldg.
Federal Square,
Newark, NJ 07101-0999

RE:  **R.P. AND V.P O/B/0 E.P. VS. RAMSEY BOARD OF EDUCATION**
     Our File No.    :  60911 ELH
     Docket No.      :  2:06-CV-05788-DMC-MF

Dear Judge Cavanaugh:

Please accept this letter brief in support of defendant's motion to supplement the administrative record.

## Nature of the Case and Procedural History

This litigation involves a dispute under the Individuals with Disabilities in Education Act (IDEA) regarding special education services provided by the Ramsey Board of Education to E.P., a student who during all pertinent times resided in the Borough of Ramsey. In the Spring of 2003 Ramsey offered an individualized education plan ("IEP") which would have placed E.P. at Ramsey High School. The following September, however, E.P.'s parents unilaterally placed E.P. in the "REACH" Program for learning disabled high school students at the Ryken School in Brooklyn, New York.

Approximately one year later the parents filed a petition for due process with the New Jersey Department of Education in which they alleged that the Ramsey Board of Education (i) failed to provide E.P. with an appropriate education during his prior years in Ramsey and (ii)

Methfessel & Werbel, Esqs.
Our File No. 60911 ELH
Page 2

failed to offer an appropriate educational program for E.P.'s ninth grade year. The due process petition demanded an award of compensatory education for alleged past deprivations and reimbursement for future educational expenses.

    Following a five day hearing before the New Jersey Office of Administrative Law, ALJ Irene Jones ruled that Ramsey had provided an appropriate educational program to E.P. and dismissed the due process petition. This appeal followed.

    In early 2007 at an initial conference before Magistrate Judge Falk I expressed a desire to take limited discovery in the form of demands for documents and subpoenaed depositions of employees of the Ryken School. Plaintiffs opposed my request, counsel submitted letter briefs and Judge Falk ruled that we were entitled to conduct such depositions. (Order Granting Discovery to Defendant, Docket No. 10).

    The depositions occurred on December 10 and 11, 2007 at the Ryken School in Brooklyn.

    In correspondence preceding a recent status conference with Judge Falk, plaintiffs took the position that in order to use any evidence generated through the depositions of Ryken School personnel, the defendant should be required to file a separate motion to supplement the record. While I expressed the view that additional motion practice would be unnecessary - we could simply attach the new evidence to our summary judgment motion and the Court could determine its admissibility and relevance - ultimately Judge Falk, during a telephonic status conference on November 30, 2007, directed that a motion to supplement the record be filed separately from our motion for summary judgment.

Methfessel & Werbel, Esqs.
Our File No. 60911 ELH
Page 3

## **Proposed Supplemental Evidence**

Ryken teacher Edma Jura testified that E.P.'s disabilities were accommodated with extra time to complete assignments and tests, a "multi-sensory approach" to instruction and simplified directions, all in accordance with the IEP created by Ramsey before E.P. was placed at Ryken. She adjusted her instructional approach based on E.P.'s needs and the information in his IEP. (Jura deposition transcript, **Exhibit AA**, pp. 6:9-7:2; 7:23-10:11; 12:24-15:7)

Ms. Jure also testified that as E.P.'s ninth grade resource room, she prepared goals and objectives for the subsequent year. With respect to goals and objectives which were not fully mastered, it was the practice of the school to repeat them in subsequent years. Id., pp. 15:25-16:13.

Ryken School Director Dr. Carol Trasborg testified that when E.P. took the New York Regents exams the test was read to him, he was assigned a scribe to answer questions and he was given twice the time of regular education students within which to answer the questions. While Dr. Trasborg was uncertain whether E.P.'s IEP actually listed these accommodations, she testified that generally such accommodations are based on the IEP. (Trasborg deposition, **Exhibit BB**, pp. 34:23-36:6)

The Ramsey IEP offered for E.P.'s ninth grade year contained these test-taking accommodations. Specifically, the IEP's list of "Strategies/Program Modifications" included "Give verbal as well as written instructions" and the "Test Modifications" listed for the New Jersey High Schol Proficiency Assessment in all three subject areas included "special examiner", "write answers in test booklet", "extended time" and "read test orally."(Administrative **Exhibit R-12**, pp. 17-18, 20)

Methfessel & Werbel, Esqs.
Our File No. 60911 ELH
Page 4

During E.P.'s ninth grade year, Dr. Trasborg testified, the Ryken School individualized E.P.'s program by allowing him to leave class to meet with his counselor at any time. Id., pp. 34:23-36:6.

Ramsey had provided E.P. with a similar option during his eighth grade year. During the administrative hearing plaintiffs' psychologist Dr. Tomaino – who was certified as an expert in learning disabilities but not in either special education programming or autism – had criticized Ramsey for permitting E.P. to see social worker Susan Cole on an "as-needed" basis. (10/19/05 TS, pp. 40:19-21; 132:2-133:6)

Based on the date of an acceptance letter in the Ryken School's file, Dr. Trasborg confirmed that the plaintiffs applied to the Ryken School at some point in January 2003 and E.P. was accepted by letter of February 4, 2003. (**Exhibit BB**, pp. 5:23-7:16).

The IEP amendments requested in the Ryken School acceptance letter are identical to those requested approximately one month later in the March 12, 2003 letter of V.P. to Ramsey Case Manager Susan Cole. (Redacted Acceptance Letter, **Exhibit CC**, Administrative **Exhibit R-10**)

Ryken teacher Thomas Tellefsen, who taught E.P. in the ninth and twelfth grades, recalled that in ninth grade E.P. generally enjoyed reading aloud once he overcame his shyness. When E.P. read aloud his performance was akin to several others in the twelve-student classroom. While he struggled at the beginning, his reading was generally "okay". Mr. Tellefsen did not use a particular educational program to address E.P.'s decoding; he simply employed practice and lower grade level reading material to accommodate his students' challenges. (Tellefsen deposition transcript, **Exhibit DD**, pp. 12:7-16:8)

Methfessel & Werbel, Esqs.
Our File No. 60911 ELH
Page 5

In educating E.P. during his ninth and twelfth grade years, Mr. Tellefson used goals and objectives from the Ramsey IEP. Id., pp. 20:4-21:16.

Ryken teacher Dean Etri, who taught E.P. during all four years at the Ryken School, testified that he too employed classroom modifications based on the IEP materials in E.P.'s IEP folder. (Etri deposition transcript, **Exhibit EE**, pp. 9:18-12:1)

Ryken teacher Vincent Brown, who taught E.P. English in tenth, eleventh and twelfth grades, provided modifications to E.P. consisting of instruction in a small group, reading of tests aloud, breaking down of instructions, repetition of materials and affording extra time for the completion of assignments and tests. These modifications were based on E.P.'s IEP. (Brown deposition transcript, **Exhibit FF**, pp. 8:5-9:5; 11:22-25)

Mr. Brown recalled that E.P. "wasn't terribly deficient" in reading aloud, which relied on decoding skills; rather, E.P.'s deficits lay primarily in the realm of reading comprehension. Id., p. 9:6-25.

Ryken teacher Stefan Alexakis, who taught cultural studies to E.P. during his ninth grade year, recalled reviewing the IEP in E.P.'s folder and employing modifications based on the IEP, specifically teaching E.P. in small environments, repeating instructions and reviewing materials. (Alexakis deposition transcript, **Exhibit GG,** pp. 6:6-7:8)

Mr. Alexakis, who taught E.P. during his first year at the Ryken School, recalled that E.P. performed "fairly well" in reading aloud, though his reading was slow. Reading aloud requires decoding skills. E.P. had difficulty with reading comprehension. Id., pp. 7:9-9:9.

Mr. Alexakis expressed the view that knowledge of a student's IQ is not important because it is not an accurate portrayal of what a student can do academically. Similarly, Mr. Alexakis did not believe that knowledge of a student's diagnosis such as autism is an essential

Methfessel & Werbel, Esqs.
Our File No. 60911 ELH
Page 6

piece of information. Mr. Alexakis is more concerned with learning the student's deficiencies, which he determines from reviewing materials in the IEP folder and his experience in teaching the student. (**Exhibit GG**, pp. 9:11-10:7; 11:23-12:14)

Brother James Smith, who taught mathematics to E.P. during all four years of his Ryken School education, similarly opined that the IQ of a student is not important because it is not an accurate demonstration of what the student can do academically. (Smith deposition transcript, **Exhibit HH**, pp. 8:7-9:7)

## Legal Argument

The standard governing review of the OAL decision is generally described in the Third Circuit as a "modified de novo" standard. S.H. v. State-Operated School District of City of Newark, 336 F.3d 260 (3rd Cir. 2003). Under this standard the District Court must give deference to the factual and credibility findings of the hearing officer unless the evidence before it compels a conclusion to the contrary. Id. at 270.

With respect to supplementation of the record, the IDEA provides that the District Court **shall** hear additional evidence at the request of either party. 20 U.S.C.A. Sec. 1415(i)(2)(C).

While some federal courts have placed limitations on the admission of new evidence that is needlessly duplicative or could have been presented during the original hearing, courts have generally interpreted the statute liberally to permit the consideration of all admissible evidence relevant to the dispute at hand. See, e.g., David H. v. Spring Branch Independent School Dist., 569 F.Supp. 1324 (S.D.Tex. 1983)(In action brought by parents of learning disabled child against public school district to recover the costs of child's private schooling, district court was not bound by the outcome of due process hearing brought under this chapter, and therefore, all admissible evidence, as in any civil trial, would be considered for its proper purpose); Mavis v.

Methfessel & Werbel, Esqs.
Our File No. 60911 ELH
Page 7

Sobol, 839 F.Supp. 968 (N.D.N.Y.1993)( Supplementing record with additional evidence was appropriate in order to bring court up to date on mentally disabled student's progress after due process hearing and argument on summary judgment motions years earlier; court would have complete picture as to student's educational status only by allowing record to be supplemented, and it did not appear that hearing officer or New York Commissioner of Education considered least restrictive environment alternative placement); Justin G. ex rel. Gene R. v. Board of Educ. of Montgomery County, 148 F.Supp.2d 576 (D.Md.2001)(Recent placement of student at private school that exclusively admitted students with disabilities was "additional evidence" within the scope of IDEA, as it properly supplemented the record by giving the district court a complete picture of the child's needs and whether the private school could meet his special needs, where information could not have been introduced during state's administrative hearing, as placement was subsequent to decision by ALJ); Government of Nashville and Davidson County, Tenn. v. Cook, 915 F.2d 232 (6th Cir. 1990), rehearing denied (Evidence relating to alternative placements for handicapped student was admissible in proceedings before district court challenging ordered placement, even though alternative placements had not been reviewed during administrative hearing; statutory requirement that district court hear "additional evidence" at request of party was not limited to evidence which filled gaps in previously introduced evidence.)

In this case the evidence obtained from the Ryken School staff could not have been presented at the hearing in 2005.  Much of the evidence relates to E.P.'s education during his tenth, eleventh and twelfth grade years, which had not yet concluded at the commencement of the hearing, in which the respondent Board, under then-controlling law, shouldered the burden of both proof and production.  More obviously, because the Ryken School is located in New York, the Office of Administrative Law – unlike this Court – did not have subpoena power over any of

Methfessel & Werbel, Esqs.
Our File No. 60911 ELH
Page 8

the witnesses.  See N.J. Court Rule 1:9-4 (a subpoena requiring the attendance of a witness at a hearing in any court may be served at any place **within the State of New Jersey** – emphasis added).

As to the relevance of the testimony, we will address the issues in turn:

**(i)     Testimony regarding the Ryken staff's reliance on the Ramsey IEP**

Plaintiffs' IDEA claims address E.P.'s education both before and after his parents placed him unilaterally at the Ryken School in September 2003.  They allege that Ramsey essentially "warehoused" him, awarding him "feel-good" grades and failing to challenge him based on low expectations and/or inability to educate a student with E.P.'s needs.  They also allege, as they must to pursue reimbursement of their unilateral educational costs, that the IEP which Ramsey offered for E.P.'s ninth grade year was inappropriate.

Supplemental discovery has demonstrated that the Ryken staff employed the very IEP which plaintiffs rejected as a guide to educate E.P.  The staff employed not only goals and objectives from the IEP, but also classroom modifications and accommodations in both instruction and testing.  This evidence is relevant to the appropriateness of the IEP offered in the Spring of 2003, which is determinative of the plaintiffs' tuition reimbursement demand.

**(ii)    Testimony and evidence regarding the timing of plaintiffs' application to Ryken**

Dr. Trasborg's testimony confirms that the plaintiffs applied to the Ryken School in January 2003 and were accepted in early February 2003.  More than a month after E.P. was accepted, V.P. wrote Ramsey to request changes to the IEP which were identical to the changes requested on Ryken's letter of acceptance.  (See **Exhibit CC**; **Administrative Exhibit R-10**) By this time, it is clear in hindsight, the plaintiffs had already decided to educate E.P. elsewhere without telling Ramsey.  This suggests that their rejection of the Ramsey IEP was an

afterthought. It also constitutes further evidence of the unreasonable conduct and "bad faith" which ALJ Jones determined to bar reimbursement pursuant to 20 U.S.C. Sec. 1412(a)(10)(C)(IV). (OAL Decision, pp. 32-36)

 **(iii)**   **Testimony regarding Ryken staff's ignorance of E.P.'s IQ and autism diagnosis**

At the administrative hearing Dr. Charlotte Tomaino, plaintiffs' psychological expert, initially faulted Ramsey for giving up on E.P. because of a low IQ score when he was much younger. When told that E.P.'s middle school teachers neither knew nor cared about E.P.'s IQ score, Dr. Tomaino switched theories and opined that Ramsey was negligent in failing to test E.P.'s IQ in order to individualize his educational program. She also criticized Ramsey for failing to recognize that E.P. was autistic.

For their part, the Ramsey teachers testified that they were not interested in either E.P.'s IQ or his formal diagnosis; what mattered to them was his functional performance in the classroom. While Dr. Trasborg of the Ryken School echoed this sentiment at the hearing, E.P.'s Ryken teachers expressed a similar view at deposition – lending support to Ramsey's position that E.P. was appropriately educated during his years in Ramsey.

 **(iv)**   **Testimony regarding Ramsey's practice of permitting E.P. to visit his counselor on an "as-needed" basis**

At the administrative hearing Dr. Tomaino criticized this aspect of E.P.'s eighth grade education. In fact, Dr. Trasborg of the Ryken School testified at deposition, this accommodation was provided by the Ryken School to E.P. in ninth grade. This testimony from plaintiffs' own witness – certified as a special education expert at the hearing and charged with E.P.'s actual high school education – supports Ramsey's position that its approach to E.P.'s social difficulties was appropriate.

Methfessel & Werbel, Esqs.
Our File No. 60911 ELH
Page 10

    **(v)**     **Testimony regarding E.P.'s reading skills**

At the administrative hearing, plaintiffs cited a comment in the report of an educational consultant in 2000 to urge that Ramsey had completely failed to identify or remediate E.P.'s problems with "decoding". E.P.'s teachers testified that his decoding was actually strong; it was his reading comprehension that required a great deal of attention. Several of E.P.'s Ryken teachers – including two who taught him in his first year at the Ryken School – echoed this sentiment, further supporting the appropriateness of both Ramsey's prior education of E.P. and the appropriateness of the reading supports offered in the ninth grade IEP which the plaintiffs rejected and the Ryken staff subsequently used to educate E.P.

For the foregoing reasons we request that the administrative record be supplemented to include proposed **Exhibits AA** through **HH**.

        Respectfully submitted,

        **METHFESSEL & WERBEL, ESQS.**

        Eric L. Harrison
        harrison@methwerb.com
        Ext. 138

ELH:sbo/Encl.
nc
      **VIA REGULAR MAIL AND E-FILING**
cc:    Lisa K. Eastwood, Esq.
      Eastwood, Scandariato & Steinberg
      723 Kennedy Boulevard
      North Bergen, NJ 07047