METHFESSEL & WERBEL, ESQS.
3 Ethel Road, Suite 300
PO Box 3012
Edison, New Jersey 08818
(732) 248-4200
+1(732) 248-2355
mailbox@methwerb.com
Attorneys for Ramsey Board of Education
Our File No.  60911 ELH

| | |
|---|---|
| R.P., V.P. AND E.P.<br><br>         Plaintiffs,<br><br>V.<br><br>RAMSEY BOARD OF EDUCATION<br><br>         Defendants. | UNITED STATES DISTRICT COURT:<br>DISTRICT OF NEW JERSEY<br>CIVIL ACTION NO.: 2:06-CV-05788 (DMC)<br><br>**AFFIDAVIT OF ERIC L. HARRISON** |

I, Eric L. Harrison, of full age, duly certify as follows:

1. I am an attorney at law licensed to practice in the State of New Jersey and before the United States District Court in the District of New Jersey.  I am a partner at the law firm of Methfessel & Werbel, attorneys for the defendant Ramsey Board of Education.  As such, I have personal knowledge of the facts asserted in this affidavit.

2. This litigation involves a dispute regarding special education services provided by the Ramsey Board of Education to E.P., a minor who during all pertinent times resided in the Borough of Ramsey.  In September of 2003, which would have been the start of E.P.'s ninth grade year at Ramsey High School, E.P.'s parents removed him and unilaterally placed him in the "REACH" Program for learning disabled high school students at the Ryken School in Brooklyn, New York.  Approximately one year later the parents filed a petition for due process with the New Jersey Department of Education in which they alleged that the Ramsey Board of Education (i) had failed to provide E.P.

with an appropriate education during his prior years in Ramsey and (ii) had failed to offer an appropriate educational program for E.P.'s ninth grade year. The due process petition demanded an award of compensatory education for alleged past deprivations and reimbursement for future educational expenses.

3. Following a five day hearing before the New Jersey Office of Administrative Law, ALJ Irene Jones ruled that Ramsey had provided an appropriate educational program to E.P. and dismissed the due process petition. This appeal followed.

4. In early 2007 at an initial conference before Magistrate Judge Falk I expressed a desire to take limited discovery in the form of demands for documents and subpoenaed depositions of employees of the Ryken School. Plaintiffs opposed my request, the issue was briefed and Judge Falk ruled that we were entitled to conduct such depositions. (Order Granting Discovery to Defendant, Docket No. 10).

5. The depositions occurred on December 10 and 11, 2007 at the Ryken School in Brooklyn.

6. In correspondence preceding a recent status conference with Judge Falk, plaintiffs took the position that in order to use any evidence generated through the depositions of Ryken School personnel, the defendant should be required to file a separate motion to supplement the record. While I expressed the view that additional motion practice would be unnecessary - we could simply attach the new evidence to our summary judgment motion and the Court could determine its admissibility and relevance - ultimately Judge Falk, during a telephonic status conference on November 30, 2007, directed that a motion to supplement the record be filed separately from our motion for

summary judgment.  This is the motion to supplement the record discussed during the conference of November 30, 2007.

7. Ryken teacher Edma Jura testified that E.P.'s disabilities were accommodated with extra time to complete assignments and tests, a "multi-sensory approach" to instruction and simplified directions, all in accordance with the IEP created by Ramsey before E.P. was placed at Ryken.  She adjusted her instructional approach based on E.P.'s needs and the information in his IEP.  (Excerpts of Transcript of Jura Deposition, **Exhibit AA**, pp. 6:9-7:2; 7:23-10:11; 12:24-15:7**)**

8. Ms. Jure also testified that as E.P.'s ninth grade resource room, she prepared goals and objectives for the subsequent year.  With respect to goals and objectives which were not fully mastered, it was the practice of the school to repeat them in subsequent years. Id., pp. 15:25-16:13.

9. Ryken School Director Dr. Carol Trasborg testified that when E.P. took the New York Regents exams the test was read to him, he was assigned a scribe to answer questions and he was given twice the time of regular education students within which to answer the questions.  While Dr. Trasborg was uncertain whether E.P.'s IEP actually listed these accommodations, she testified that generally such accommodations are based on the IEP.  (Trasborg deposition, **Exhibit BB**, pp. 34:23-36:6)

10. A review of the Ramsey IEP for E.P.'s ninth grade year demonstrates that these test-taking accommodations were in fact contained therein. Specifically, the IEP's list of "Strategies/Program Modifications" included "Give verbal as well as written instructions" and the "Test Modifications" listed for the New Jersey High Schol Proficiency Assessment in all three subject areas included "special examiner", "write

answers in test booklet", "extended time" and "read test orally."(Administrative **Exhibit R-12**, pp. 17-18, 20)

9. During E.P.'s ninth grade year, Dr. Trasborg testified, the Ryken School individualized E.P.'s program by allowing him to leave class to meet with his counselor at any time. Id., pp. 34:23-36:6.

10. Ramsey had provided E.P. with a similar option during his eighth grade year. During the administrative hearing plaintiffs' psychologist Dr. Tomaino – who was certified as an expert in learning disabilities but not in either special education programming or autism – had criticized Ramsey for permitting E.P. to see social worker Susan Cole on an "as-needed" basis. (10/19/05 TS, pp. 40:19-21; 132:2-133:6)

11. Based on the date of an acceptance letter in the Ryken School's file, Dr. Trasborg confirmed that the plaintiffs applied to the Ryken School at some point in January 2003 and E.P. was accepted by letter of February 4, 2003. (**Exhibit BB**, pp. 5:23-7:16).

12. The IEP amendments requested in the Ryken School acceptance letter are identical to those requested approximately one month later in the March 12, 2003 letter of V.P. to Ramsey Case Manager Susan Cole. (Redacted Acceptance Letter, **Exhibit CC**, Administrative **Exhibit R-10**)

13. Ryken teacher Thomas Tellefsen, who taught E.P. in the ninth and twelfth grades, recalled that in ninth grade E.P. generally enjoyed reading aloud once he overcame his shyness. When E.P. read aloud his performance was akin to several others in the twelve-student classroom. While he struggled at the beginning, his reading was generally "okay". Mr. Tellefsen did not use a particular educational program to address

E.P.'s decoding; he simply employed practice and lower grade level reading material to accommodate his students' challenges.  (Tellefsen deposition transcript, **Exhibit DD**, pp. 12:7-16:8)

14.     In educating E.P. during his ninth and twelfth grade years, Mr. Tellefson used goals and objectives from the Ramsey IEP.  Id., pp. 20:4-21:16.

15.     Ryken teacher Dean Etri, who taught E.P. during all four years at the Ryken School, testified that he too employed classroom modifications based on the IEP materials in E.P.'s IEP folder.  (Etri deposition transcript, **Exhibit EE**, pp. 9:18-12:1)

16.     Ryken teacher Vincent Brown, who taught E.P. English in tenth, eleventh and twelfth grades, provided modifications to E.P. consisting of instruction in a small group, reading of tests aloud, breaking down of instructions, repetition of materials and affording extra time for the completion of assignments and tests.  These modifications were based on E.P.'s IEP.  (Brown deposition transcript, **Exhibit FF**, pp. 8:5-9:5; 11:22-25)

17.     Mr. Brown recalled that E.P. "wasn't terribly deficient" in reading aloud, which relied on decoding skills; rather, E.P.'s deficits lay primarily in the realm of reading comprehension.  Id., p. 9:6-25.

18.     Ryken teacher Stefan Alexakis, who taught cultural studies to E.P. during his ninth grade year, recalled reviewing the IEP in E.P.'s folder and employing modifications based on the IEP, specifically teaching E.P. in small environments, repeating instructions and reviewing materials.  (Alexakis deposition transcript, **Exhibit GG,** pp. 6:6-7:8)

19. Mr. Alexakis, who taught E.P. during his first year at the Ryken School, recalled that E.P. performed "fairly well" in reading aloud, though his reading was slow. Reading aloud requires decoding skills. E.P. had difficulty with reading comprehension. Id., pp. 7:9-9:9.

20. Mr. Alexakis expressed the view that knowledge of a student's IQ is not important because it is not an accurate portrayal of what a student can do academically. Similarly, Mr. Alexakis did not believe that knowledge of a student's diagnosis such as autism is an essential piece of information. Mr. Alexakis is more concerned with learning the student's deficiencies, which he determines from reviewing materials in the IEP folder and his experience in teaching the student. (**Exhibit GG**, pp. 9:11-10:7; 11:23-12:14)

21. Brother James Smith, who taught mathematics to E.P. during all four years of his Ryken School education, similarly opined that the IQ of a student is not important because it is not an accurate demonstration of what the student can do academically. (Smith deposition transcript, **Exhibit HH**, pp. 8:7-9:7)

22. The deposition transcripts annexed hereto are accurate copies of the original transcripts in my file.

I swear under penalty of perjury that the foregoing is true and correct.

_____
Eric L. Harrison

DATED: January 9, 2008